| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------------X<br>UNITED STATES OF AMERICA,<br><br>                       v.<br><br>STEVEN PAGARTANIS,<br><br>                Defendant.<br>-----------------------------------------------------------------X | For Online Publication Only<br><br><br><u>ORDER</u><br>22-cv-6011 (JMA)<br>18-cr-374 (JMA) |

**AZRACK, District Judge:**

Defendant Steven Pagartanis ("Defendant") has petitioned this Court to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. <u>See</u> Motion to Vacate, ECF No. 52 (the "Petition"). For the reasons set forth below, the Petition is DENIED.

## I.  BACKGROUND[1]

**A.  Plea and Sentencing**

On December 10, 2018, Defendant—who had been charged in a nine-count indictment—appeared before the Honorable Joseph F. Bianco and entered a guilty plea to Count Two, conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1349, 1341, and 1343. (See Minute Entry, ECF No. 22; December 10, 2018 Transcript ("Plea Tr."), ECF No. 47-1.) In the plea agreement, Defendant waived any challenge to his sentence or conviction on appeal or by collateral attack if the sentence imposed was one hundred eighty (180) months or less. (Plea Tr. at 19:10-20.) At the plea hearing, Judge Bianco confirmed the terms of the plea agreement with Defendant, specifically his waiver of the right to appeal if his sentence was one hundred eighty

---

[1] Only background facts relevant to determination of the pending Petition are set forth herein.

(180) months or less. (Id. at 19:21-20:11.) Before Defendant was sentenced, this case was transferred to the undersigned.

The Sentencing Guidelines calculation in the Presentence Report ("PSR") was different from the 121-151-month estimate in the plea agreement. The plea agreement had mistakenly omitted the two-point adjustment for vulnerable victim status pursuant to § 3A1.1(b). (See ECF No. 29.) The resulting Guidelines calculation, which included this additional two-point adjustment, was 151-188 months. (Id.)

In its sentencing memorandum, the Government agreed that this enhancement was appropriate given the facts and circumstances of Defendant's offense. See ECF No. 33. The Government also addressed the loss amount, methodology, and caselaw in support of its calculation, as well as all applicable enhancements. (Id. at 16-19.) Conversely, Defendant challenged the Government's and PSR's loss enhancement calculations, suggested an alternative calculation methodology, and disputed the vulnerable victim enhancement's applicability. See ECF No. 34. Both the loss amount issue and the vulnerable victim enhancement issue were fully briefed. Defendant sought a below-Guidelines sentence. (Id.)

At Defendant's January 9, 2020 sentencing, the Court heard arguments on the proper loss amount and the vulnerable victim enhancement's applicability. (See Sentencing Transcript ("Tr."), ECF No. 53-4, at 3:2-15:2.) The Court then adopted the PSR's proposed $13 million loss amount and agreed that the vulnerable victim enhancement applied. (Id. at 15:4-16:4.) At no point during his sentencing did Defendant argue that the Government had breached the plea agreement, and he further confirmed that he was satisfied with his representation by defense counsel. (Id. at 16:5-8.)

The Court then sentenced Defendant to one-hundred-seventy (170) months on Count Two—which was within the Guidelines range of 151-188 months and under the 180-month

appellate waiver.  (See Minute Entry, ECF No. 37; Judgment, ECF No. 40.)  Defendant was also ordered to pay restitution in the amount of $6,519,594.00.  The Court further imposed a three-year (3) term of supervised release.  (Id.)  Defendant appealed his sentence and conviction.  The Second Circuit dismissed the appeal as barred by the waiver contained in the plea agreement.  (See Mandate of September 30, 2021, ECF No. 51.)

### B. Instant Collateral Attack

On October 6, 2022, Defendant, acting pro se, filed the instant application, alleging for the first time that he received ineffective assistance of counsel and was "induced to plead guilty" and that his prior counsel failed to "argue the assessed amounts were inflated and was not the amount received from the victims" for Guidelines and restitution purposes.  (See Petition at 4.)  Defendant further argues that the vulnerable victim enhancement's application breached the plea agreement.  (Id. at 5.)  The Government responded on November 25, 2022 (see ECF No. 53, ("Govt. Resp.")), and Defendant filed a reply thereafter.  (See ECF No. 54.)

## II.  DISCUSSION

### A. Section 2255 Standard

Section 2255 permits a prisoner in custody to move to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  To merit relief under Section 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citation

omitted). The petitioner must also show that the constitutional error had "substantial and injurious effect" that caused "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted). Moreover, to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982); see also Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) ("Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack" (cleaned up)).

Defendant's instant challenge to his conviction is two-pronged, namely: (1) he received ineffective assistance of counsel; and (2) the addition of the vulnerable victim enhancement was a breach of his plea agreement. The Government argues that (1) Defendant did not receive from ineffective assistance of counsel; and (2) it did not breach the plea agreement by advocating for the vulnerable victim enhancement.

## B. Ineffective Assistance of Counsel

Defendant alleges, for the first time, that he received ineffective assistance of counsel and was "induced to plead guilty" in connection with the subject plea agreement, and that his prior counsel failed to "argue the assessed amounts were inflated and was not the amount received from the victims" for Guidelines and restitution purposes. (See Petition at 4.) This claim may be presently reviewed, as it "may appropriately be raised for the first time in a 2255 motion, 'whether or not the petitioner could have raised the claim on direct appeal.'" Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (quoting Massaro v. United States, 538 U.S. 500, 504-09 (2003)). To prevail on an ineffective assistance claim, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness…under prevailing norms;" and

4

(2) prejudice as a result of defense counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 692 (1984).

Under the first prong, a court must "eliminate the distorting effects of hindsight," "evaluate the conduct from counsel's perspective at the time," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." Id. at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Strickland, 466 U.S. at 694). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the [petitioner] makes an insufficient showing on one" of the Strickland prongs. Strickland, 466 U.S. at 697. "The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel flounder on that standard." Perryman v. United States, No. 12-cr-123, 2021 WL 5834279, at *2 (E.D.N.Y. Dec. 9, 2021) (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001)).

1. Allegedly Erroneous Advice that Induced Defendant to Plead Guilty

Defendant contends, in his petition, that he "was induced to plead guilty by counsel's assertions that he would receive 97 to 120 months." (Pet. at 5.) In his affidavit, he alleges that:

> Mr. Keating told me that my guideline sentence was 97 to 121 months if I pled guilty to the plea agreement. If I had known that my sentencing exposure would be 151 to 188 months, I would have waited for another offer within that range, a binding plea within that range, or went to trial on the charges. My lack of prepleading information left me unknowingly exposed to a greater sentence than I expected or agreed to. Mr. Keating advised me that the court's colloquy was standard, and the court would still sentence me to 97 to 121 months when I was sentenced. After receiving this information from Keating, I pled guilty, regardless

5

> of the court's colloquy and the plea agreement stating 121 to 151 months because Keating stated that this was an incorrect calculation. At that time, I had no understanding of the laws as they related to the facts of my case, or why my sentence was suddenly increased from the 97 to 121 months that Keating told me the sentencing would be.

(Def. Aff., ECF No. 52, ¶ 3.)

However, at the plea hearing, Judge Bianco explained sentencing and the sentencing guidelines during the following colloquy:

> THE COURT: [T]he determination of what sentence you will receive is up to the Court, and only the Court. Nothing that your lawyer told you regarding sentencing is binding on the Court. Nothing that the prosecutor may have told you about sentencing is binding on the Court. Sentencing is up to the judge. As we sit here today, nobody knows what your sentence will be. Mr. Keating doesn't know. Mr. McConnell doesn't know. I don't know what your sentence is going to be, because I don't have enough information to make that decision right now.
>
> ****
>
> One of the other factors I do want to mention is something called the Sentencing Guidelines. The Sentencing Guidelines are as the name suggests, a set of guidelines that takes into account your relevant criminal conduct in this case, as well as any criminal history you might have, and sets forth a range of imprisonment within which you could be sentenced. I want to emphasize to you these guidelines are not mandatory, only advisory, and, therefore, I'm required to impose a sentence within whatever the applicable range might turn out to be. I could [] sentence you above that range or I can sentence you below that range, depending on how I weigh all the factors that I am to consider under the law.
>
> Finally, whatever sentence I ultimately impose in this case, no matter how happy or unhappy you may be with that sentence, you may [n]ot withdraw or get back your guilty plea. In other words, while you may appeal the sentence itself, to the extent that you have not waived your right to appeal in your plea agreement with the government, you may not und[o] your being found guilty by virtue of your plea here today. Do you understand those things about sentencing?
>
> DEFENDANT: Yes, sir.

(Plea Tr. 15.)

Judge Bianco also further explained the sentencing guidelines when he reviewed the plea agreement with Defendant:

6

>THE COURT: [T]here's a calculation of the guideline in paragraph two that you and the government have calculated. I just want to emphasize a couple of things about that.
>
>I have my own obligation to determine what the guideline calculation is, and it could turn out that the calculation could be different than the one in your plea agreement. If it differs from the one in your plea agreement, you don't get an opportunity to get your plea back.
>
>In addition, if it turns out to be the same as the one in the agreement or different, that guideline calculation is not binding on the court in any way. As I said before, I could sentence above or below whatever the guideline calculation turns out to be, and you wouldn't get an opportunity to get your plea back.
>
>Do you understand those things?
>
>DEFENDANT: Yes, your Honor

(Plea Tr. 18-19.)

At the plea hearing, Defendant confirmed that no one had "offered [him] any inducements or threatened [him] or forced [him] to enter into this agreement or plead guilty." (Plea Tr. 21.) Defendant also affirmed that no one had made him "anyone made any promise to [him] as to what [his] sentence is going to be." (Id.)

"Statements made by a defendant during an allocution hearing carry a strong presumption of verity," see Blackledge v. Allison, 431 U.S. 63, 74 (1977), and a district court "ordinarily does not abuse its discretion in relying on them to discredit later unsupported assertions." United States v. Perkins, 229 F.3d 1136 (2d Cir. 2000) (citing United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir.1992)). "No hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory." Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992) (citations omitted) (finding no evidentiary hearing was required where the defendant claimed that his plea "was the result of reliance on his attorney's incorrect characterization of the agreement and transmittal of an alleged

7

promise made by the prosecutor," but those "unsupported allegations" were "contradicted [by] Gonzalez'[s] earlier statements made under oath at his plea allocution." Id. at 1101; see also Rensing v. United States, No. 16-cr-442, 2021 WL 1326909, at *12 (S.D.N.Y. Apr. 8, 2021) (denying petitioner's ineffective assistance of counsel-based § 2255 petition and finding his "self-serving" and "conclusory" statements regarding his attorney's purported promises during the plea negotiation process were "directly contradicted by his sworn statements at [his] plea hearing").

Here, Defendant's conclusory allegations about Mr. Keating's purportedly erroneous advice are contradicted by the sentencing transcript. Judge Bianco explicitly told Defendant "I have my own obligation to determine what the guideline calculation is, and it could turn out that the calculation could be different than the one in your plea agreement. If it differs from the one in your plea agreement, you don't get an opportunity to get your plea back." (Plea Tr. 18-19.) To the extent that Defendant's conclusory affidavit suggests that Mr. Keating guaranteed that the Court would "sentence me to 97 to 121 months," Judge Bianco clearly explained—and Defendant affirmed he understood—that no one, including Mr. Keating or the Court, knew what Defendant's sentence would be. Defendant also affirmed that no one had made him "anyone made any promise to [him] as to what [his] sentence is going to be." (Plea Tr. 21.)

Additionally, Mr. Keating is an experienced, intelligent, and conscientious defense attorney who has appeared before this Court on many occasions. Defendant's conclusory allegations that Mr. Keating promised or guaranteed that Defendant that he would be sentenced based on a guidelines range of 97 to 121 months—which was below the estimated Guidelines range in the plea agreement—is simply not credible.

Defendant's conclusory claims about Mr. Keating are also contradicted by his admission, at sentencing, that he was satisfied with the representation he received from Mr. Keating. (Tr.

8

16:5-7.) Notably, Defendant made this admission <u>after</u> the Court had found that Defendant was responsible for the $13 million loss amount and that the additional two-point enhancement for vulnerable victims was applicable.

Given the points above and the record here, the Court finds that no hearing is warranted and concludes that Defendant's conclusory and self-serving allegations are not credible.

2. <u>Mr. Keating's Alleged Ineffective Representation at Sentencing</u>

Defendant also contends that Mr. Keating failed to effectively challenge the loss and restitution amounts at sentencing. This argument also fails.

First, although not raised by the Government, the Court notes that Defendant's plea and collateral attack waiver preclude him from pursuing these arguments about counsel's alleged ineffectiveness at sentencing. <u>See</u> <u>United States v. Garigen</u>, No. 21-112, 2022 WL 258568, at *2 (2d Cir. Jan. 28, 2022) ("[Defendant's] challenge to the competency of counsel centers on counsel's performance in connection with sentencing, which clearly is barred by her appellate waiver."). Second, Defendant's claims that defense counsel was ineffective at sentencing are also substantively meritless.

Next, the Court notes that defense counsel negotiated a favorable plea agreement that: (1) gave Defendant maximum flexibility to challenge the loss amount and contest numerous Guidelines enhancements; and (2) included an appeal waiver under the statutory maximum sentence and below the top of the revised Guidelines range that the Court found applicable at sentencing. <u>See</u> <u>generally</u> ECF No. 53-1.

Moreover, defense counsel provided reasonable and effective representation in challenging the loss and restitution amounts both prior to, and at sentencing.[2] From the outset, defense counsel

---

[2] Defendant's ineffective assistance claims concerning restitution also fail because "claims…such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable

9

challenged the PSR's individual victim-loss figures, including for those specific victims whose loss amounts Defendant currently claims were improperly "inflated." (See Addendum to Presentence Report, ECF No. 31, at 1-2 (referencing and evaluating defense counsel's "object[ions] to information regarding the outstanding losses submitted by several of the victims.")) These objections were subsequently investigated and rejected. (See id. at 2-3.)

Undeterred, defense counsel's sentencing submission again advanced many of the arguments Defendant now complains were ignored – including that the PSR contained inaccurate victim-loss figures – and contained numerous mitigation letters and medical information for the Court's consideration, as well as facts and caselaw supporting the reduced loss amount and restitutions figures Defendant again seeks. (See ECF No. 34.) Finally, at the sentencing hearing, defense counsel once again advocated for the lower loss and restitution amounts and advocated against the vulnerable victim enhancement. (See Tr. at 13:5-14:14.) The Court considered these submissions and arguments, as well as Defendant's own statement, and concluded that the loss amount was $13 million, the restitution amount was $6,519,594.00, and the victim enhancement was applicable. (See Tr. at 3:2-16:4; Judgment, ECF No. 40.) Nothing about the circumstances surrounding Defendant's plea process or sentencing demonstrates that either proceeding was fundamentally unfair or unreliable, or that he was deprived of effective assistance of counsel in

---

claims for release from custody." United States v. Thiele, 314 F.3d 399, 400 (9th Cir. 2002), cert. denied, 540 U.S. 839 (2003); see also Totesau v Lee, No. 19-cv-6992, 2022 WL 1666895, at *20 (E.D.N.Y. May 25, 2022) (quoting United States v. Boyd, 407 F. App'x 559, 560 (2d Cir. 2011) (summary order)); Kaminski v. United States, 339 F.3d 84, 87-88 (2d Cir. 2003), cert. denied, 540 U.S. 1084 (2003) ("Restitution orders cannot be challenged through a habeas petition because a 'monetary fine is not a sufficient restraint on liberty to meet the "in custody" requirement [of 28 U.S.C. § 2255],' even if raised in conjunction with a challenge to a sentence of imprisonment."); Nabe v. United States, No. 11-cv-5526, 2014 WL 4175731, at *7 (E.D.N.Y. Aug. 20, 2014) (citing Kaminski, 339 F.3d at 84) (denying petitioner's § 2255 petition wherein he asserted that he received ineffective assistance of counsel where his prior attorney "failed to argue that the court's loss and restitution determinations: (1) were arbitrary, (2) were not based upon affidavits of loss submitted by identifiable victims, (3) failed to consider [petitioner's] s ability to pay the ordered amount, and (4) were improper because he was not sentenced to probation," based on Second Circuit precedent that "restitution orders cannot be challenged on, district courts lack subject matter jurisdiction to grant ineffective assistance of counsel claims based on a counsel's failure to object to a restitution order").

connection therewith. The Court thus concludes that this prong of Defendant's ineffective assistance claim lacks merit.

Defendant's ineffective assistance claim is a thinly veiled attempt to relitigate the loss amount for Guidelines and restitution purposes, issues that were fully briefed, argued, and decided over three years ago. (See ECF No. 40.)

Finally, the Court's decision on the loss amount was fully supported by applicable law and explained during the sentencing hearing. (See generally ECF No. 47-2.) Accordingly, because the arguments Defendant claims defense counsel should have advanced at sentencing are all meritless, Defendant has failed to demonstrate that his counsel's performance was deficient in any respect or that he was prejudiced. [3]

## C. Breach of the Plea Agreement

Defendant asserts–again for the first time–that the Government breached the plea agreement by advocating for the vulnerable victim enhancement. Defendant appears to raise this argument both as a direct challenge to his sentence as well in the guise of an ineffective assistance of counsel claim that faults defense counsel for not explicitly arguing this at sentencing.

"To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement…. Moreover, because plea bargains require defendants to waive fundamental constitutional rights, prosecutors are held to

---

[3] The Court declines Defendant's invitation to apply United States v. Banks, where the Third Circuit held that sentencing courts can only consider a victim's "actual loss" during sentencing. See 55 F.4th 246, 258 (3d Cir. 2022). Defendant waived this argument by raising it for the first time in his reply brief. See Roberts v. United States, No. 13-cv-653, 2018 WL 1582288, at *2 (E.D.N.Y. Mar. 30, 2018). Additionally, Banks was decided nearly three years after Defendant's sentencing, meaning defense counsel could not have relied upon it, and at least one court in this Circuit recently declined to recognize Banks as persuasive. See United States v. Williams, No. 19-cr-315, 2023 WL 2613503, at *9 (D. Conn. Mar. 23, 2023). Finally, Defendant cannot establish that defense counsel's failure to raise this claim fell below an objective standard of reasonableness, see United States v. De La Pava, 268 F.3d 157, 166 (2d Cir. 2001), nor that he was prejudiced. Even if this argument had been raised, this Court would have, based on then-binding Second Circuit precedent, still concluded that it is permissible to rely on intended loss – a determination that would have been unreviewable on appeal due to Defendant's appellate waiver.

11

meticulous standards of performance." Perryman, 2021 WL 5834279, at *5 (quoting United States v. Vaval, 404 F.3d 144, 152-53 (2d Cir. 2005)). The Second Circuit has held that "[r]ecognizing that a Guidelines estimate in a plea agreement, sometimes called a Pimentel estimate, is an estimate subject to 'mistakes, oversights, or new information…' the Government does not violate a defendant's reasonable expectations simply because it deviates from the [Pimentel] estimate.'" United States v. Taylor, 961 F.3d 68, 82 (2d Cir. 2020) (quoting United States v. Wilson, 920 F.3d 155, 163 (2d Cir. 2019)). Indeed, "[t]he Guidelines are long and complex, and Pimentel estimates are generally made in haste when the possibility arises to dispose of a case through a plea agreement." United States v. Habbas, 527 F.3d 266, 272, n. 1 (2nd Cir. 2008). As such, the Second Circuit declined to establish a rule "categorically prohibiting the government from deviating from a Pimentel estimate, absent newly discovered facts." Id. at 272. Indeed, the Habbas court thought it "foolhardy to attempt to set a broad rule, beyond noting the obvious importance of good faith on the government's part." Id. This reasoning has been followed in subsequent cases. See, e.g., United States v. MacPherson, 590 F.3d 215 (2nd Cir. 2009) (distinguishing cases subsequent to Habbas and finding that the government neither acted in bad faith nor breached the plea agreement in advocating for a higher sentencing range than that estimated therein, where the agreement and the plea colloquy put the defendant on notice that the Pimentel estimate was non-binding and that if the estimate was wrong, the plea could not be withdrawn). A defendant's reasonable expectations may be breached where the Government's deviation "produces serious unfairness for the defendant." Wilson, 920 F.3d at 163 (internal citations omitted). "Serious unfairness may be found, even if the government did not act in bad faith, if 'the Government's change of position (without new justifying facts) changed the defendant's exposure so dramatically as to raise doubts

12

whether the defendant could reasonably be seen to have understood the risks of the agreement.'" Taylor, 961 F.3d at 82 (internal citations and quotations omitted).

The Court concludes that the Government did not breach the plea agreement. Specifically, the Court finds that the Government did not violate Defendant's reasonable expectations under the plea agreement when it argued in favor of the vulnerable victim enhancement. See, e.g., Habbas, 527 F.3d at 266 (Government did not breach plea agreement by supporting a four-level sentencing increase based on defendant's leadership role that was not in plea agreement estimate, where plea agreement clearly stated that sentencing estimate was not binding on prosecution or the court).

Further, the Government's advocacy for the vulnerable victim enhancement did not change Defendant's exposure "so dramatically as to raise doubts whether the defendant could reasonably be seen to have understood the risks of the agreement." Wilson, 920 F.3d at 163. The addition of this enhancement only added two points to the Guidelines calculation and, thus, increased the Guidelines calculation from 121-151 months to 151-188 months. Cases such as Wilson—where the plea agreement contained a 108 to 135-month guidelines estimate and the Government subsequently, at sentencing, argued for a guidelines range of 360 months to life—are clearly distinguishable. See Wilson, 920 F.3d at 160.

Moreover, it is undisputed that the instant parties did not stipulate to the plea agreement's Guidelines calculation to argue the disputed loss amount and other Guidelines enhancements, and both sides were free to make diverging arguments. This appeal also falls within the framework of Habbas and its progeny. Here, after Defendant indicated that he wished to plead guilty, the Government prepared a Pimentel estimate in the plea agreement, which mistakenly omitted the vulnerable victim enhancement.[4] Additionally, during Defendant's plea colloquy, the Court

---

[4] Defendant did not – nor does he now – allege any bad faith or malfeasance on the part of the Government.

advised him that the Pimentel estimate in the plea agreement was not necessarily accurate nor compulsory; Defendant acknowledged this advice and notwithstanding, voluntarily decided to enter into the subject plea agreement. (Plea Tr. at 14:24-16:23; 18:17-19:9.) See also United States v. Derounian, No. 19-cr-1818, 2022 WL 211998, at *3 (2d Cir. Jan. 25, 2022) (finding Government did not breach plea agreement and relying, inter alia, on the fact that "during the change of plea hearing, the district court explicitly advised [the defendant] that the estimated Guidelines computation in the plea agreement was not a guarantee of a specific sentence and that the estimates were not a guarantee that bound the government or court"). Moreover, although bad faith by the Government may not be required in all circumstances, the Court stresses that there is no evidence of bad faith here. See Habbas, 527 F.3d at 272, n. 1 (Government's "furnishing of a Pimentel estimate will not bar the government from making good-faith changes to its position, even as to information already in its possession, if, for instance, further study shows the applicability of guideline provisions not considered in making the estimate."). The Court thus concludes that the Government's advocacy for the vulnerable victim enhancement did not breach the plea agreement and rejects Defendant's argument accordingly.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Petition, ECF No. 52, is DENIED. The Clerk of the Court is respectfully directed to close the corresponding civil case, No. 22-cv-6011.

The Court declines to issue a certificate of appealability because Defendant has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED**.

Dated: July 11, 2023
    Central Islip, New York

    /s/ (JMA)
Hon. Joan M. Azrack
United States District Judge